UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tile Shop Holdings, Inc., | Case No. 17-cv-0776 (ADM/TNL) |
| Plaintiff, | |
| v. | **DECLARATION OF BJORN T. HONDA** |
| Allied World National Assurance Company, | |
| Defendant. | |

Bjorn T. Honda states and declares as follows:

1. The facts set forth herein are based upon my personal knowledge, information, and belief, unless otherwise stated.

2. I am a Senior Vice President/Producer in the Management Liability Group. I was hired in May 2001 as a Vice President at RJF Agencies, Inc., which was acquired by Marsh & McLennan Agency LLC ("MMA") in January 2011. My duties in 2012 and through the present include acquiring new management liability clients for MMA and advising them on available management liability insurance.

**TSLLC's private company management liability policy and Tile Shop Holdings' public company D&O policy**

3. From 2012 until Tile Shop Holdings, Inc. ("Tile Shop Holdings") went public, MMA was the insurance broker for The Tile Shop, LLC ("TSLLC"), a privately-held company.

4. In particular, in May 2012, MMA was the insurance broker for TSLLC with respect to management liability insurance. MMA had previous experience assisting businesses with management liability insurance during the transition from a private to a public company.

5. On June 21, 2012, TSLLC purchased a private company management liability policy with policy limits of $5,000,000. National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "AIG") was the carrier.

6. Subsequently, TSLLC informed MMA that it planned to combine with a special purpose acquisition company ("SPAC") called JWC Acquisition Corp. under a new holding company, Tile Shop Holdings, Inc. ("Tile Shop Holdings"), which would list its stock publicly on the NASDAQ exchange upon the closing of this business combination ("Business Combination"). MMA understood that upon the closing of the Business Combination, TSLLC would become a wholly-owned subsidiary of Tile Shop Holdings.

7. MMA understood that TSLLC, JWC Acquisition Corp. and other parties entered into a Contribution and Merger Agreement in June 2012 relating to the planned Business Combination. The Business Combination was subject to the approval of the shareholders of JWC Acquisition Corp. and was expected to close sometime in August 2012.

8. TSLLC's private company management liability policy was effective through August 20, 2012. At that point two excess layers were added to bring TSLLC's "tower" of coverage to $15,000,000 and the policies were put into a six year "run-off" as

2

of that date. Run-off, also known as "tail coverage" refers to the six year period in which TSLLC can report claims made against it or its directors, officers and employees that arise out of wrongful acts which occurred, or allegedly occurred, before August 21, 2012.

9. With respect to public-company directors and officers ("D&O") coverage for Tile Shop Holdings, we reached out to numerous insurance carriers, including Allied World National Assurance Company ("AWAC"), to gauge their interest in providing either primary or excess coverage.

10. In August 2012, Tile Shop Holdings purchased a public company D&O policy, both primary and several excess layers of follow-form coverage. National Union was the primary carrier with a $10,000,000 limit. AWAC was the first excess layer, providing $10,000,000 in additional limits. The excess policy was designed to provide additional liability insurance coverage in excess of the Primary Policy in case the underlying policy limits were exhausted. The policies began or "incepted" on August 20, 2012. The date of August 20, 2012 was selected as the inception date to ensure Tile Shop Holdings' D&O insurance was in place before its shares began trading publicly.

11. MMA recommended that (i) TSLLC purchase private company management liability insurance up until the closing of the Business Combination and purchase six-year run-off coverage thereafter; and (ii) Tile Shop Holdings purchase public company D&O insurance with an inception date and a prior wrongful acts date of August 20, 2012 because that date preceded the date on which Tile Shop Holdings effectively went public and its shares began trading publicly.

12. The public company D&O policies insured (among other things) "Securities Claims" for "Wrongful Acts" that a public company could face, covering Tile Shop Holdings, the public corporation, its directors and officers, and its subsidiaries. Buying prior acts coverage for securities claims for Tile Shop Holdings to cover the period before it came into existence, before its shares began trading publicly and before TSLLC became a subsidiary, would be unnecessary.

13. With respect to TSLLC, any post-August 20, 2012 claims relating to wrongful acts that occurred pre-Business Combination would be covered under the TSLLC private company run-off coverage put into place as of the closing of the Business Combination.

14. Thus, in purchasing the private company coverage (which would go into run-off at the time the public company policy incepted) and the post-closing public company D&O coverage, TSLLC would have management liability coverage for pre-Business Combination claims under the private company run-off policy and Tile Shop Holdings would have coverage for claims arising out of post-Business Combination acts under the public company policy.

15. The total cost for this comprehensive private and public D&O insurance program in 2012 exceeded $350,000.

16. About two months after binding coverage, the policies were issued by the insurance companies and sent to MMA to pass on to the insured.

**Policy renewal for August 2013-2014**

17. Tile Shop Holdings renewed its public D&O policies for the period August 20, 2013-August 20, 2014. Again the primary policy was with National Union, policy no. 01-310-11-22 (the "Primary Policy"). The Primary Policy contained a coverage limit of $10,000,000. Tile Shop Holdings also renewed several layers of excess D&O coverage, including its excess policy with AWAC. The first layer excess policy was with AWAC. Specifically, Tile Shop Holdings purchased an Excess Directors and Officers Liability Following Form Policy, policy no. 0307-7718 (the "Excess Policy") from AWAC effective August 20, 2013 to August 20, 2014. The Excess Policy contained a limit of $10,000,000, excess of the total underlying limits in the Primary Policy.

18. MMA participated in an underwriter's meeting with the primary and excess insurers in the weeks prior to August 20, 2013. The purpose of these meetings was to give the insurers an opportunity to meet with the insured and go through any questions they may have to assist them in making underwriting decisions, including whether or not to provide D&O insurance to the insured. The meeting was held at Tile Shop Holdings' corporate office in Minnesota. Harold Olave, the underwriter for AWAC, participated in that meeting on behalf of AWAC.

**A securities class action is filed on November 15, 2013**

19. On November 15, 2013, a class action suit entitled *Lagendyk v. Robert A. Rucker, Timothy Clayton, and Tile Shop Holdings, Inc.* was filed in the Southern District of New York against Tile Shop Holdings, Inc. and two of its officers (Rucker and

5

Clayton), each of which was an Insured under the relevant policies. Within a week, another class action suit entitled *Puerta v. Tile Shop Holdings, Inc., et al.* was filed in the same venue.

20. Once the *Lagendyk* and *Puerta* suits were filed, MMA tendered the claim to the insurers. MMA tendered the claim under the Tile Shop Holdings public company policy because the suits were brought against the public company, Tile Shop Holdings and certain of its officers and directors

**Tile Shop Holdings' audit committee retains counsel to investigate**

21. Tile Shop Holdings initiated an investigation of the claims through its audit committee. I assisted Tile Shop Holdings in locating qualified legal counsel. In particular, I reached out to National Union/AIG's panel counsel firms in Minneapolis to ascertain the various firms' availability to represent Tile Shop Holdings. This included Dorsey & Whitney ("Dorsey"), and particularly Peter Carter, who were "panel counsel" for National Union/AIG at the time. Subsequently I learned that Tile Shop Holdings, through its audit committee, retained Dorsey to conduct the investigation.

**National Union accepts coverage**

22. National Union accepted coverage on December 20, 2013. In its coverage letter, National Union acknowledged that the individual defendants and Tile Shop Holdings were "Insureds" under the Primary Policy, and that the *Lagendyk* and *Puerta* suits constituted "Securities Claims" under that policy. AIG agreed to cover the actions under a reservation of rights. (Ex. E.)

23.     National Union reserved rights under certain policy provisions, including the "Other Insurance and Indemnification" section and Exclusion 4(B)(1)(a)&(b) excluding coverage for Loss in connection with any claim arising out of profit to which the Insured was not legally entitled or arising out of deliberate criminal or fraudulent acts if establish by final adjudication.  National Union also reserved rights under its prior act exclusion.  In doing so, National Union cited the reason as being the one allegation in *Lagendyk* concerning a pre-August 20, 2012 SEC filing (which allegation was dropped in the subsequent Amended Complaint) and said that "any such Wrongful Act or Related Wrongful Act is not covered under the Policy due to Endorsement 10."  (*Id.*)  These are consistent with typical reservations of rights MMA sees.

### Retention of Minnesota counsel

24.     When the *Lagendyk* and *Puerta* actions were filed in mid-November 2013, Tile Shop Holdings and the individual Insureds initially retained the Sperling & Slater firm in Chicago.  On February 13, 2014, the *Lagendyk* and *Puerta* actions were consolidated and co-lead plaintiffs were named ("Securities Action").  Shortly thereafter, Tile Shop Holdings and the officer defendants retained Minnesota counsel Wendy Wildung at Faegre Baker Daniels and the outside director defendants retained David Pearson at Winthrop & Weinstine.

### An Amended Complaint is filed in the Securities Action

25.     On March 13, 2014, the Securities Action was transferred to Minnesota as *Beaver County Employees' Retirement Fund, et al. v. Tile Shop Holdings, Inc., et al.*, and

7

in May 2014, the Securities plaintiffs filed their Consolidated Amended Complaint ("Amended Complaint").

### AWAC Denies Coverage

26. On February 26, 2014 and on July 10, 2014 (after the filing of the Amended Complaint) AWAC denied coverage. In its February letter, AWAC adopted National Union's coverage position except with respect to AWAC's prior acts exclusion. (Ex. F, p. 2 ("[W]ith the exception of the operation of the Prior Acts Exclusion at Endorsement 2 of the Allied World Excess Policy, Allied World adopts and incorporates by reference the coverage positions in National Union's December 20, 2013 letter.").) AWAC explained that the plaintiffs in *Lagendyk* and *Puerta* allege that defendants – "from August 22, 2012 through November 13, 2013" – made materially false and misleading statements and omissions in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. In the "Coverage Discussion" portion of its letter, AWAC quoted its prior acts exclusion; it asserted that the securities complaints contain allegations of wrongful acts that occurred prior to August 20, 2012 and that, to the extent there are wrongful acts which are alleged to have occurred after August 20, 2012, they arise out of, or are based upon or attributable to pre-August 20, 2012 wrongful acts. It therefore concluded that its prior act exclusion "appears to preclude coverage for the securities class actions."

27. AWAC's letter did not define "wrongful acts" nor indicate whether it was using the definition in the Primary Policy or some other definition of wrongful acts to deny coverage.

28. AWAC issued another letter denying coverage in July 2014. AWAC's July denial letter referenced the Amended Complaint and stated that the lead plaintiffs alleged numerous misrepresentations/omissions between August 22, 2012 and January 28, 2014. In its "Coverage Discussion," AWAC again quoted its prior acts exclusion and concluded that its policy "appears to preclude coverage for the class action." MMA disagreed with AWAC's denial of coverage and conveyed its disagreement to AWAC.

### The shareholder derivative litigation

29. In 2015, Tile Shop Holdings' shareholders commenced two derivative actions. The Delaware Court of Chancery consolidated the two actions on June 2, 2015 (together, the "Consolidated Derivative Action").

30. Another Tile Shop Holdings shareholder, David Thomson, filed a derivative action in the Delaware Chancery Court on September 22, 2016 entitled, *David Thomson, Derivatively and on Behalf of Tile Shop Holdings, Inc. v. Chris R. Homeister, et al.* in the Delaware Court of Chancery ("Thomson Derivative Action") (the Thomson Derivative Action together with the Consolidated Derivative Action are collectively referred to as the "Derivative Actions".)

### National Union acknowledged coverage of the Derivative Actions

31. MMA assisted Tile Shop Holdings in notifying its insurers of the Derivative Actions and requested indemnification. National Union and AWAC treated the Derivative Actions as a related claim with the previously noticed Securities Action.

32. National Union again covered the claims as acknowledged in its September 4, 2015 letter. It determined that the claims were covered under the same 2013-14

Primary Policy. National Union acknowledged that the Securities Action and the Derivative Actions constitute a "Securities Claim" as defined by the Primary Policy and that Tile Shop Holdings and its officers and directors are "Insureds."

### AWAC denied coverage of the Derivative Actions

33. Tile Shop Holdings timely notified AWAC of the Derivative Actions. AWAC denied coverage for the Consolidated Derivative Action on the same grounds as it denied the Securities Action.

### The 2014-2015 renewal of D&O coverage

34. Given MMA's disagreement with AWAC's interpretation of its prior acts exclusion in denying coverage to Tile Shop Holdings, MMA asked AWAC to remove the prior act exclusion from the renewal of the 2014-15 policy. AWAC removed the exclusion. In its place, AWAC added an endorsement specifying that it was following form to National Union's prior acts exclusion. AWAC did not increase the quoted premium for the coverage after removing its prior acts exclusion.

35. Attached hereto as the exhibits stated are true and correct copies of the following documents and are filed publicly:

| Exhibit | Description of Exhibits |
|---|---|
| A | August 20, 2012 emails between H. Olave, P. Salecki and B. Watkins (AW002347) |
| B | August 20, 2012 AWAC binder of insurance (AW002318-002320) |
| C | October 11, 2012 email from P. Salecki to B. Watkins (AW002338) |
| D | Binder Checklist, invoice and emails reflecting renewal of AWAC Excess Policy on 8/21/13 (AW002661-62, AW002669, AW002698-700) |

| | |
|---|---|
| E | December 20, 2013 letter from AIG to T. Clayton accepting coverage of the Securities Action (AW002265-2269) |
| F | February 26, 2014 letter from AWAC to Tile Shop Holdings denying coverage (AW000410-AW000413) |
| G | September 4, 2015 letter from AIG to K. Geadelmann accepting coverage of the Derivative Actions (AW002258) |
| H | October 15, 2015 Letter from AWAC to MMA denying coverage of the Derivative Actions (AW000439) |

36. Attached hereto as the exhibits stated are true and correct copies of the following documents and are **Filed Under Seal**:

| Exhibit | **Description of Exhibits** |
|---|---|
| I | Press release issued on or around June 27, 2012 (TSH048196_0002-0007) |
| J | August 15, 2012 email from A. Mesic to B. Honda (MMA-TS-01404-01407) |
| K | August 16, 2012 emails between B. Watkins and H. Olave (MMA-TS-00992) |
| L | August 16, 2012 email from S. Cox to B. Honda (MMA-TS-01400-01403) |
| M | August 16, 2012 email from H. Olave to B. Watkins (MMA-TS-00991-00993) |
| N | August 17, 2012 email from B. Honda to L. Behrman (MMA-TS-01290-01292) |
| O | August 20, 2012 emails between A. Mesic to B. Watkins (MMA-TS-00194-00200) |
| P | August 20, 2012 email from P. Salecki to B. Watkins (MMA-TS-00070-00074) |
| Q | August 20, 2012 email from B. Watkins to S. Spreadbury and ACE/Chubb internal emails (MMA-TS-00503-00505) |
| R | August 20, 2012 Run-off endorsement for TSLLC policy no.8225-7484 (MMA-TS-00549) |
| S | August 22, 2012 email from H. Olave to B. Watkins (MMA-TS-0075-00077) |
| T | October 24, 2012 email from AWAC to Holli Bromenshenkel attaching Excess D&O package. (MMA-TS-02161-02178) |
| U | November 18, 2013-December 2, 2013 emails between Marsh & McLennan Agency LLC and AIG. (MMA-TS-10054-10065) |

| V | February 3, 2014-February 25, 2014 emails between B. Honda, B. Watkins, and T. Clayton (MMA-TS-10031-10033) |
|---|---|
| W | Correspondence tendering claim to insurers (TSH055080_0001-0006; AW001784-1785; AW0024021 (attachments omitted)) |
| X | August 18, 2014 email from H. Olave to C. Hieserich re: DO 00281 00(01 10) – Follow Form of Specified Terms of Policy.  (AW023100-023102) |
| Y | 2014-2015 AWAC policy (AW003102-AW003120) |
| Z | June 2, 2015 emails between C. Henderson and C. Hieserich (MMA-TS-08074-08075) |
| AA | Forcefield: Primary D&O For Public Companies (MMA-TS-12915-12916) |

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  February 6, 2019            s/Bjorn T. Honda
                                    Bjorn T. Honda